# Composite Exhibit A

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

EMMANUEL DUNAGAN, JESSICA MUSCARI,
ROBERT J. INFUSINO, and STEPHANIE PORRECA, on
behalf of themselves and a class of similarly situated
persons,

                        Plaintiffs,

          v.

ILLINOIS INSTITUTE OF ART-CHICAGO, LLC, an
Illinois limited liability company; ILLINOIS INSTITUTE
OF ART-SCHAUMBURG, LLC, an Illinois limited
liability company; ILLINOIS INSTITUTE OF ART, LLC,
an Illinois limited liability company; DREAM CENTER
FOUNDATION, a California non-profit corporation;
DREAM CENTER EDUCATIONAL HOLDINGS, LLC, a
Pennsylvania limited liability company; and JOHN DOES
1-10, in their individual capacity,

                        Defendants.

Case No. _____

CLASS ACTION
COMPLAINT
AND JURY DEMAND

## CLASS ACTION COMPLAINT

1.     Plaintiffs Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, and Stephanie

Porreca ("Named Plaintiffs"), on behalf of themselves and a class of similarly situated persons,

bring this class action complaint against the Dream Center Foundation ("DCF"), Dream Center

Education Holdings, LLC ("DCEH"), the Illinois Institute of Art, LLC ("IIA"), the Illinois

Institute of Art-Chicago, LLC ("IIA-Chicago"), the Illinois Institute of Art-Schaumburg, LLC

("IIA-Schaumburg"), and John Does 1-10, in their individual capacity (collectively,

"Defendants") for violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815

ILCS 505/2 ("ICFDPA"), fraudulent concealment, and negligent misrepresentation.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

## NATURE OF THE CASE

2.      Defendant IIA is an institution of higher education in operation since 1916, which is comprised of multiple campuses, and offers bachelor's and associate degrees for several programs, including culinary arts, design, fashion, and media arts.

3.      On March 3, 2017, Defendant DCF entered into an agreement to purchase Defendant IIA from its then-owner, Education Management Corporation ("EDMC"). At the time of the purchase, Defendant IIA, and all its campuses, were accredited by the Higher Learning Commission ("HLC"), a private, non-profit accrediting agency recognized by the United States Department of Education.

4.      On January 20, 2018, the transfer of control of IIA schools from EDMC to DCF and its subsidiaries went into effect. On that date, IIA's campuses—including IIA-Chicago, located in Chicago, IL, and IIA-Schaumburg, located in Schaumburg, IL—lost their status as accredited institutions of higher education.

5.      Defendants did not inform IIA students at any time after agreeing to purchase IIA that IIA campuses could lose their accreditation, and, in direct defiance of HLC's instruction, did not inform students when the loss of accreditation happened.

6.      For at least five months thereafter, Defendants made false and misleading representations to Named Plaintiffs and other similarly situated students regarding IIA's accreditation status, including, in widely disseminated materials, that IIA campuses "remain accredited." Defendants' misrepresentations violated the ICFDPA and Illinois common law.

7.      Defendants also concealed from Named Plaintiffs and other similarly situated students for those same five months that IIA had lost its status as an accredited institution of

2

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

higher education. Defendants' concealment likewise violated the ICFDPA and Illinois common law.

8.      Named Plaintiffs discovered the truth about IIA's lack of accreditation between approximately June 20, 2018 and July 10, 2018, when they returned from break to start the summer quarter.

9.      Defendants continued to make false and misleading representations after July 9, 2018, including that IIA was likely to reobtain accreditation and that credits earned since IIA lost accreditation would be deemed fully accredited once IIA's accreditation was ultimately reinstated. IIA's accreditation was never reinstated.

10.     Defendants' misrepresentations and omissions of material facts regarding IIA's lack of accreditation violate the ICFDPA and Illinois common law and have caused substantial harm to Named Plaintiffs and over 1,000 similarly situated students.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper under 735 ILCS 5/2-209 because Defendants transact business in Illinois and make and perform contracts in Illinois.

12.     Venue for this action properly lies in Cook County, Illinois pursuant to Section 2-101 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101, and the ICFDPA, 815 ILCS 505/10a(b), because Defendants are doing business in Cook County, Illinois and the majority of the transactions complained of herein occurred in Cook County, Illinois.

## PARTIES

13.     Named Plaintiff Emmanuel Dunagan is a natural person who resides, and at all relevant times has resided, in Bellwood, IL. Mr. Dunagan enrolled as a student at IIA-Chicago

3

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

in December 2014 and remains enrolled there. He is on schedule to graduate from IIA-Chicago in December 2018.

14.     Named Plaintiff Jessica Muscari is a natural person who resides, and at all relevant times has resided, in Wheaton, IL. Ms. Muscari was enrolled as a student at IIA-Chicago from April 2015 until she graduated in September 2018.

15.     Named Plaintiff Robert J. Infusino is a natural person who resides, and at all relevant times has resided, in Addison, IL  Mr. Infusino was enrolled as a student at IIA-Schaumburg from October 2015 until he withdrew in September 2018.

16.     Named Plaintiff Stephanie Porreca is a natural person who resides, and at all relevant times has resided, in Wood Dale, IL. Ms. Porreca was enrolled as a student at IIA-Schaumburg from July 2014 until she graduated in June 2018.

17.     Defendant IIA is an institution of higher education with campuses located in Chicago, IL, Schaumburg, IL, and Novi, MI. Through an intermediary company, IIA is a subsidiary of Defendant DCEH.

18.     Defendants IIA-Chicago and IIA-Schaumburg are owned by Defendant IIA.

19.     Defendant DCEH is an Arizona non-profit limited-liability company that was formed on January 9, 2017 to facilitate the sale of assets between EDMC and Defendant DCF. DCEH's principal office is located in Pittsburgh, Pennsylvania. DCEH owns and operates all of Defendant IIA's campuses.

20.     Defendant DCF was organized as a California non-profit corporation on January 8, 2008. DCF's principal office is located in Los Angeles, CA.

21.     DCF is the sole owner of DCEH and the ultimate parent company of the buyers in the EDMC transaction.

4

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

22.     Defendants John Doe 1-10 are officers and directors of one or more Defendants.

23.     Defendants were, at all relevant times, engaged in trade and commerce in the state of Illinois.

24.     At all relevant times, Defendants have advertised, offered for sale, sold, and solicited Illinois consumers to enroll in educational courses and degree-granting programs at IIA's Illinois campuses.

## FACTUAL ALLEGATIONS

### Defendant DCF Purchases IIA from EDMC

25.     Since 2014, DCF had been "actively exploring formal educational partnerships to possibly acquire an accredited university or university system with a focus on acquiring a for-profit educational institution who would benefit from becoming non-profit." *See* Press Release, Dream Center, Acquisition of Education Management Corporation (Mar. 3, 2017), *available at:* https://dreamcenter.org/dream-center-foundation/.

26.     From those explorations emerged "an amazing opportunity for the Dream Center Foundation to acquire 3 university systems from a for-profit organization, Education Management Corporation (EDMC), and turn those systems into community focused not-for-profit educational institutions." *Id.*

27.     On March 3, 2017, EDMC announced the execution of a definitive agreement for the sale of substantially all of its assets and schools, including the IIA schools, to DCF.

28.     As stated by DCF, its purchase of schools from EDMC (including IIA) would, among other things: "[p]rovide low cost or no cost GED training at each campus in conjunction with participating Dream Centers;" "[o]ffer academic programs on-site and/or through 'on-line' at Dream Centers throughout our network;" "[p]rovide scholarships for graduates from the

5

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

network of Dream Centers;" "[p]rovide pathways and scholarships for higher education for the thousands of [Dream Center] volunteers and interns;" and "[c]onnect graduates to jobs through job placement programs throughout the Dream Center Network, and through expanded job placement efforts at each college campus site." *Id.*

29.     In addition, DCF announced that, as part of the acquisition, it intended to invest "a percentage of revenue into humanitarian and charitable programs supported by the Dream Center Foundation in Los Angeles and throughout the United States." *Id.*

30.     On March 3, 2017, EDMC executed an agreement for the sale of substantially all of its assets and schools to DCF, including the assets of IIA, for $60 million.

31.     When the EDMC acquisition was announced on March 3, 2017, Randall Barton, the managing director of DCF and the executive chairman of DCEH, stated that "[e]ducation has always been at the heart of the Dream Center Foundation's mission.  While the Dream Center will continue to operate these institutions as they have operated, we will bring to them an expanded vision; they will be community-focused, not-for-profit institutions coupling their quality programs with a humanitarian culture that values social responsibility."

32.     On March 6, 2017, IIA informed students by email of EDMC's "intention to sell [IIA] to DCF, a not-for-profit institution."  IIA told students in the email that "[t]his agreement is great news for our school;" that "[t]he Illinois Institute of Art-Chicago is not going out of business;" and that "you and your fellow students will have the opportunity to continue your current programs of study and graduate on time and without interruption."

33.     IIA's March 6, 2017 email to students did not say anything about IIA's accreditation, including how the change of control over IIA from EDMC to Dream Center could affect IIA's accreditation.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

34.     On October 17, 2017, DCF issued a press release stating, among other things, that "the relationship between the schools and the Dream Center Foundation will allow these schools to continue to provide students with an excellent education and strengthen their sense of social responsibility."

35.     DCF completed the purchase of all IIA campuses on January 20, 2018.

36.     There is significant overlap in the management, control, and operations of DCF, DCEH, and IIA.

37.     For example, Randall Barton is the managing director of DCF and the executive chairman of DCEH and Reverend Matthew Barnett is the founder and president of DCF and a member of the DCEH Board of Managers.

38.     The three managers of Defendant IIA, according to the Office of the Illinois Secretary of State, are: (i) Brent Richardson (DCEH CEO), (ii) Randall K. Barton (managing director of DCF), and (iii) Matthew Barnett (president of DCF).

39.     The cost of attendance for academic year 2018-2019 for both IIA-Chicago and IIA-Schaumburg was estimated by DCEH to be $28,878 (living with parents) and $32,644 (living off campus).

40.     This estimate included tuition of $483 per credit as well as estimates for expenses such as room and board, transportation, personal expenses, fees, books, and supplies.

**The Importance and Value of Institutional Accreditation**

41.     Institutional accreditation is the primary means of assuring and improving the quality of higher education institutions and programs in the United States.

42.     Accreditation is the most powerful signal to students, employers, and the public that they can have confidence in a college or university.

7

43.     On its consumer information page, the Illinois Board of Higher Education states: "When you're looking around at Illinois schools, be sure the institution you select is accredited. Accreditation, by various nonprofit bodies, guarantees that the degree granted by an institution meets the accrediting body's standards of quality and content." *See* Illinois Board of Higher Education, Consumer Information, *available at:* http://legacy.ibhe.org/consumerInfo/authorize.htm.

44.     Accreditation is especially critical to students' efforts to obtain employment and transfer credits to other educational institutions.

45.     With respect to employment, accreditation signals to prospective employers that a student's educational program has met widely accepted standards.

46.     With respect to transferability, accreditation indicates to educational institutions receiving and processing requests for transfer that the sending institution has met threshold expectations of quality.

47.     When a school lacks accreditation, it is a signal to employers and other educational institutions that the school may offer a sub-par education.

48.     For that reason, a student wishing to transfer credits to a different school or obtain employment will be at a significant disadvantage if the student attends or attended a school that lacks accreditation.

**IIA Loses Accreditation on January 20, 2018**

49.     From the date Named Plaintiffs enrolled at IIA through January 19, 2018, IIA was accredited by HLC. HLC accredits approximately 1,000 degree-granting colleges and universities that are based in a nineteen state region of the United States, including Illinois.

8

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

50.     On January 20, 2018, HLC removed IIA's status as an accredited institution of higher education and placed it instead on "Change of Control–Candidacy" status.

51.     Under "Change of Control–Candidacy" status, IIA was not an accredited institution of higher education, but rather was a candidate school *seeking* accreditation.

52.     Under such "candidacy" status, IIA remained eligible to receive federal funds under Title IV of the Higher Education Act ("HEA").

53.     The period of IIA's candidacy status was to last a minimum of six months to a maximum of four years.

54.     With the six-month minimum, the earliest IIA could have re-attained HLC accreditation was on or around July 20, 2018.

55.     On January 20, 2018, HLC instructed IIA in a public disclosure document to inform students taking classes or graduating during the candidacy period that their "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers."

56.     HLC also required IIA to provide proper advisement and accommodations to its students in light of the loss of accreditation, including assisting students with financial accommodations or transfer arrangements, if requested.

57.     HLC's directive to inform students regarding the loss of accreditation was consistent with Defendants' legal duty not to engage in substantial misrepresentations.

58.     As a condition of its initial and continuing eligibility to participate in the Title IV program under the HEA, one or more Defendants entered into a program participation agreement ("PPA") with the United States Department of Education in which they agreed to "comply with all statutory provisions of or applicable to Title IV of the HEA" as well as "all applicable

9

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

regulatory provisions prescribed under that statutory authority." 34 CFR § 668.14(b)(1). *See also* 20 U.S.C. § 1094(a) ("The [PPA] shall condition the initial and continuing eligibility of an institution to participate [in the Title IV program])."

59.     Under United States Department of Education regulations, an institution of higher education receiving federal funds under Title IV of the HEA is prohibited from making "substantial misrepresentation[s] about the nature of its educational program, its financial charges, or the employability of its graduates." 34 C.F.R. § 668.71.

60.     A misrepresentation concerning "the nature of an eligible institution's educational program" explicitly includes, but is not limited to "false, erroneous or misleading statements concerning - (a) The particular type(s), specific source(s), nature and extent of its institutional, programmatic, or specialized accreditation." 34 C.F.R. § 668.72(a).

## Defendants Conceal IIA's Loss of Accreditation from Named Plaintiffs and the Putative Class and Affirmatively Misrepresent that IIA is Accredited

61.     After IIA lost its status as an accredited institution on January 20, 2018, Defendants did not inform prospective, current, or former students.

62.     On January 23, 2018, two days after losing its status as an accredited institution, IIA-Schaumburg President David Ray sent an email to all IIA-Schaumburg students to share the "very exciting news" that IIA-Schaumburg "is now a non-profit institution!"

63.     The January 23, 2018 email did not inform students that IIA-Schaumburg had lost its accreditation.

64.     On January 24, 2018, three days after losing its status as an accredited institution, IIA-Chicago President Josh Pond sent an email to all IIA-Chicago students to share the "very exciting news" that IIA-Chicago "is now a non-profit institution!"  The email invited students to

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

"[p]lease stop by the Student Lounge tomorrow (Thursday), January 25 between 11AM and 1PM for a cake and ice cream celebration!"

65.     The January 24, 2018 email did not inform students that IIA-Chicago had lost its accreditation.

66.     Upon information and belief, one or more John Doe defendants **directed** Presidents Pond and Ray to send the January 23-24 **emails** to students.

67.     On February 28, 2018, Defendants published a "Catalog Addendum" to IIA's 2017-2018 course catalog. The only item addressed in the addendum was an "Accreditation Update," which stated:

> **Accreditiaton [sic] Update**
> *The following fully replaces the Institutional Accreditaiton [sic] Statement on page 5 of the current:*
>
> **Institutional Accreditation**
> The Illinois Institute of Art is in transition during a change of ownership. *We remain accredited* as a candidate school seeking accreditation under new ownership and our new non-profit status. Our students remain eligible for Title IV.

(emphasis added).

68.     On April 26, 2018, Defendants published a spring course catalog for 2017-2018, which stated:

> **Institutional Accreditation**
> The Illinois Institute of Art is in transition during a change of ownership. *We remain accredited* as a candidate school seeking accreditation under new ownership and our new non-profit status. Our students remain eligible for Title IV.

(emphasis added).

69.     Throughout the winter and spring of 2018, Defendants continued to recruit new students to enroll in IIA-Chicago and IIA-Schaumburg.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

70.     During this time, Defendants held open houses where staff provided information about IIA to prospective students.

71.     During these open houses and other recruitment efforts, Defendants did not disclose to prospective students that IIA was an unaccredited school.

72.     In addition, Defendants affirmatively represented in IIA's enrollment agreements after January 20, 2018 that the school was accredited.  Like the course catalogues, the enrollment agreements stated: "We remain accredited as a candidate school seeking accreditation under new ownership and our new nonprofit status."

73.     On or around May 16, 2018, Defendants became aware of public reports regarding their deceptive and misleading representations to students about their accreditation status.

74.     A May 16, 2018 article in the online publication *Republic Report* stated:

> As a DCEH employee told me: "These students don't know that they just graduated from an unaccredited school.  They have no idea.  They don't know they may not be eligible for jobs."  The employees say that DCEH is not directing campuses to tell graduates and current students about the unaccredited statuses of their schools.

*See* David Halperin, "Inside a For-Profit College Conversion: Lucrative Ties, Troubling Actions," *Republic Report* (May 16, 2018), *available at:*

https://www.republicreport.org/2018/inside-a-for-profit-college-conversion-lucrative-ties-troubling-actions/.

75.     Instead of correcting the misleading representations to students, DCEH CEO Brent Richardson distributed an email to DCEH employees—but not to students—attacking the author of the article as "a long-time critic of the proprietary higher education sector."  Mr.

FILED DATE: 12/6/2018 5:58 PM 2018CH15216

Richardson's email did not address the article's allegation that DCEH was misrepresenting and concealing its loss of accreditation from students and graduates.

76.    Students graduated from IIA between January 20, 2018 and June 19, 2018 without being informed by Defendants that the courses they had taken from January 20, 2018 onwards were not accredited and that the degree IIA conferred on them was from an unaccredited school.

77.    Upon information and belief, one or more John Doe defendants directed Defendants to conceal the loss of accreditation from students and directed Defendants to make affirmative misrepresentations regarding accreditation in, among other places, the course catalogues, on the website, and in enrollment agreements.

**Defendants Inform Students that IIA is not Accredited and that IIA is Closing Down, but Continue to Conceal and Misrepresent Material Facts**

78.    As late as June 19, 2018, Defendants still had not communicated to students that IIA lost its accreditation on January 20, 2018.

79.    Until on or around June 19, 2018, IIA's websites contained the following disclosure: "We remain accredited as a candidate school seeking accreditation under new ownership and our new non-profit status."

80.    The same disclosure appeared in IIA's course catalogs until August 6, 2018.

81.    On June 19, 2018, the *Pittsburgh Post-Gazette* published an article exposing that HLC had removed the school's accreditation on January 20, 2018, and that "Art Institute schools [including the Chicago and Schaumburg schools] failed to communicate that change to students, as the Higher Learning Commission had instructed in its Jan. 20 letter to Dream Center." Daniel Moore, "Deal Under Scrutiny as Art Institutes Face Accreditation Setbacks," *Pittsburgh Post-Gazette* (June 19, 2018), *available at:* https://www.post-gazette.com/business/career-

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

workplace/2018/06/19/Deal-under-scrutiny-Art-Institutes-accreditation-setbacks-dream-center/stories/201806140022.

82.     The *Post-Gazette* article went on to say that "Dream Center continued to post statements online and in school catalogs that the schools 'remain accredited.'" *Id.*

83.     The next day, IIA-Schaumburg President Ray and new IIA-Chicago President Jennifer Ramey sent identical emails to current IIA-Schaumburg and IIA-Chicago students informing them that "[w]e are a candidate school seeking accreditation under new ownership and our new non-profit status. During candidacy status, an institution is not accredited[,] but holds a recognized status with HLC indicating the institution meets the standards for candidacy. Our students remain eligible for Title IV funding. DCEH continues to actively work with HLC to earn reinstatement of accreditation."

84.     Upon information and belief, one or more John Doe defendants directed Presidents Ramey and Ray to send these June 20 emails to students.

85.     The June 20 emails were the first communication that students, including Named Plaintiffs, received from Defendants acknowledging that IIA-Schaumburg and IIA-Chicago were not accredited.

86.     The June 20 emails did not inform students that IIA-Schaumburg and IIA-Chicago lost accreditation five months prior.

87.     School was not in session when the June 20 emails went out.

88.     On June 21, 2018, IIA-Chicago President Ramey sent a similar email to recent IIA-Chicago graduates, titled "An Update to Recent Graduates of The Illinois Institute of Art - Chicago." Unlike the June 20 email to current students, the email to recent graduates disclosed that IIA-Chicago lost accreditation on January 20, 2018.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

89.     Upon information and belief, on June 21, 2018, IIA-Schaumburg President Ray sent substantially the same email to recent graduates of IIA-Schaumburg.

90.     Upon information and belief, one or more John Doe defendants directed Presidents Ramey and Ray to send the June 21 emails to students.

91.     On July 2, 2018, while students were still on break, DCEH announced that it was ceasing enrollment at IIA campuses and that all IIA campuses would close on December 28, 2018.

**Defendants Continue to Mislead Students About IIA's Accreditation**

92.     Students did not discover the truth about IIA's loss of accreditation until, at the earliest, June 20, 2018, and in many cases, only after they returned to school after a break on July 9 or July 10, 2018.

93.     The scene on the IIA-Chicago and IIA-Schaumburg campuses during the first days of the summer quarter was chaotic as students tried to learn what had happened with accreditation, what it meant for their past and future coursework, and what their options were in light of the school's pending closure.

94.     On July 9 and 10, IIA-Chicago President Ramey held meetings with students to address the loss of accreditation and closing of the school, but could not provide satisfactory answers to students' questions about what these developments meant for their education and prospects of completing their degrees.

95.     On July 10, 2018, President Ramey sent an email to students, stating in part:

Thank you to those who took the time to meet today.  One of the items of feedback in today's meeting was that you would like to hear from a member of DCEH leadership.  Instead of our previously scheduled meetings for tomorrow, a member of the DCEH leadership team will be will be [sic] on campus tomorrow, July 11, to meet with you.

15

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

96.     On July 11, 2018, DCEH Chief Operating Officer John Crowley flew from Phoenix, Arizona to Chicago to meet with IIA students and staff. Over the course of the day, he held multiple meetings with students and staff.

97.     At those meetings, Mr. Crowley held himself out as speaking on behalf of the Dream Center.

98.     During the July 11 meetings, Mr. Crowley made numerous false, misleading, deceptive, and conflicting statements to students, including that: (i) IIA was still accredited; (ii) IIA was likely to soon re-obtain accreditation; (iii) when IIA re-obtained accreditation, all credits earned during the period of candidacy would reflect such accreditation; and (iv) everything was "going to be okay" and "everyone is going to be accommodated."

99.     At one meeting, a student asked why DCEH did not tell students for over two quarters about the loss of accreditation. Mr. Crowley responded that HLC "put us into what we call candidacy status, which means you're still accredited."

100.    To the contrary, as set forth above, HLC had informed DCEH on January 20, 2018 that IIA "[wa]s not accredited."

101.    Moments later, the same student stated to Mr. Crowley that IIA "is not accredited," that she had called HLC and HLC had informed her that the twenty-four credits she earned since January are "not accredited at all," and that "you should have informed us [about the loss of accreditation] immediately."

102.    Mr. Crowley responded, "I get it, I get it, I get it, I get it. I'll take that. It's a good criticism."

103.    During the same meeting, in response to a student demanding her money back because the school had lost accreditation, Mr. Crowley stated, "Listen. You are not listening.

FILED DATE: 12/6/2018 5:58 PM  2018CH15216

I'm saying that if we get accreditation, and your credits are transferrable, then you didn't lose anything."

104.    At a different July 11 meeting, Mr. Crowley stated that: "We were put onto candidacy status. We were under the impression it would be no problem, assume the accreditation, assume the school, assume everything . . . the fact that it is six months from February or five months from February, it blows our mind."

105.    Despite stating that the five to six-month time period "blows our mind," Mr. Crowley knew, or should have known, that six months was the minimum amount of time IIA could be in candidacy status. In fact, Defendants were told that the process could take as long as four years.

106.    At the same meeting, Mr. Crowley told students that "we've worked with the DOE, I've personally been to Washington, we have sat with the Undersecretary of Education, and we believe that everyone is going to be accommodated. They just have to run their process."

107.    Minutes later, Mr. Crowley conceded that, since January 20, 2018, Defendants had been misrepresenting and omitting material facts to students regarding accreditation:

> Student: Why did the school fail to tell us that it's not accredited after January? You still need to inform your students. We are paying money.
>
> Crowley: Understood, understood. So the DOE has granted us Title IV, which means you are okay. HLC said we are gonna be okay. So we assumed we were gonna be okay.
>
> Student: . . . . How can you just think it is okay to not tell your students?
>
> Crowley: After the last three meetings, I don't think it is okay. But it is what we did.

108.    Moments later, after explaining that she will have to retake over a year of coursework, the same student asked, "What are we supposed to do now?" Mr. Crowley

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

responded that "the best answer is that we are working with HLC and we think it is going to be okay."

109.    Later during the same meeting, a different student asked, "What about reimbursement for the people from January moving forward?" Mr. Crowley responded, "I get it. We have two decisions. One, if we get the accreditation, everything is fine. If the literal asterisk comes along that says we are not going to get accredited, then we have to make a different decision. And then that opens up a whole other world in terms of finance."

110.    At the meeting, Mr. Crowley recommended that students on track to graduate from IIA before the school closed in December 2018 stay at the school to do so.

111.    On August 6, 2018, Defendants published an addendum to its IIA course catalogues that deleted the "we remain accredited" language from the accreditation statement. Regarding accreditation, the addendum provided:

**Accreditation Statement**

***The following completely replaces the Institutional Accreditation statements on page 5 of the current catalog.***

The Illinois Institute of Art is in transition during a change of ownership. We are a candidate school seeking accreditation under new ownership and our new non-profit status. Our students remain eligible for Title IV.

112.    On or around November 7, 2018, HLC announced that IIA-Chicago and IIA-Schaumburg would not regain accreditation, but rather would remain on candidacy status through their announced December 28, 2018 closure date.

113.    On November 8, 2018, the presidents of IIA-Chicago and IIA-Schaumburg sent identical emails to students explaining that "[w]e are extremely disappointed in this unexpected outcome and assure you we will continue to work with each of you to find the best path forward for your continued education." The emails further explained that "[s]tudents taking classes or

18

graduating during the candidacy period should know that while the institution remains in candidacy status, their courses or degrees are not accredited by HLC."

114. Upon information and belief, one or more John Doe defendants directed Presidents Ramey and Ray to send the November 8 emails to students.

115. All students who graduated or will graduate from IIA on or after January 20, 2018 will have graduated from an unaccredited school.

116. Official IIA transcripts from January 20, 2018 to the present now contain an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located in Chicago [and Schaumburg], Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

117. Upon information and belief, this disclaimer was not included in official transcripts before June 20, 2018.

118. All prospective employers or transfer schools that request official student transcripts for Named Plaintiffs or the class will receive this disclaimer.

119. From at least January 20, 2018 (if not earlier) to the present, Defendants' misrepresentations and omissions regarding IIA's accreditation were made willfully and intentionally in order to mislead students about the nature of the school's accreditation.

120. From January 20, 2018 to the present, Defendants have continued their participation in the Federal Direct Loan Program and continued to draw down Title IV funds under the HEA.

121. Although all IIA campuses are closing in 2018, DCEH and DCF continue to own and operate approximately twelve Art Institute campuses as well as multiple Argosy and South

19

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

University campuses that participate in the Federal Direct Loan Program and have neither announced closure dates nor ceased enrollment.

## CLASS ACTION ALLEGATIONS

122.    Named Plaintiffs bring this action on behalf of themselves and a class of all similarly situated individuals.  The class is defined as "all persons who were first enrolled or remained enrolled at IIA-Chicago and/or IIA-Schaumburg on or any time after January 20, 2018, including students who were enrolled prior to January 20, 2018 and remained enrolled after that date, as well as students who first enrolled on or after that date."

123.    Named Plaintiffs and class members are similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis.

124.    A class action is a superior means, and the only practicable means, by which the Named Plaintiffs and the class members can challenge Defendants' conduct as applied to all students who attended IIA on or after January 20, 2018.

125.    This action satisfies the numerosity, commonality, adequacy, and appropriateness requirements of the class action statute, 735 ILCS 5/2-801.

126.    Defendants' representations and omissions have caused significant damage to all students who have taken out student loans or paid out of pocket to attend IIA since January 20, 2018.

127.    Had Defendants followed HLC's directive and informed Named Plaintiffs in January 2018 that their "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," Named Plaintiffs would have investigated options for continuing their education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

## Numerosity – 735 ILCS 5/2-801(1)

128.    The potential number of class members are so numerous that joinder would be
impracticable. While the precise number of students enrolled at IIA on or after January 20, 2018
is known only to Defendants, there are well over 1,000 such students. *See* College Scorecard,
United Stated Department of Education, *available at:*

https://collegescorecard.ed.gov/search/?name=illinois%20institute%20of%20art%20&sort=salar
y:desc.

129.    The precise number of class members can easily be determined through
discovery.

## Commonality – 735 ILCS 5/2-801(2)

130.    The nature of the relief sought is common to all members of the class and
common questions of law and fact exist as to all members of the class. These common questions
of law and fact predominate over any questions affecting individual members of the class.

131.    All members of the class have been subject to and affected by a uniform course of
conduct in that all class members were enrolled at IIA during the period in which Defendants'
unlawful conduct was ongoing.

132.    These common legal and factual questions arise from Defendants'
misrepresentations to, and concealments from, the entire IIA student body regarding the status of
its accreditation starting on January 20, 2018. As alleged herein, these representations were
widely disseminated on the school's website, in course catalogues and course catalogue
addendums published online and available to all students, in enrollment agreements, and in
emails to the student body, among other places.

133.    The common questions of law and fact include, but are not limited to:

21

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

i.   Whether Defendants misrepresented to students that IIA was an accredited institution on or after January 20, 2018;

ii.  Whether, after January 20, 2018, Defendants failed to inform IIA students that IIA was no longer an accredited institution;

iii. Whether Defendants intended that IIA students rely upon the concealment, suppression, or omission of the fact that IIA was not an accredited institution;

iv.  Whether Defendants' misrepresentations regarding IIA's accreditation constitute a deceptive act or practice under the ICFDPA;

v.   Whether Defendants' omissions regarding IIA's accreditation constitute a deceptive act or practice under the ICFDPA;

vi.  Whether Defendants' conduct is unfair under the ICFDPA such that it offends public policy; is immoral, unethical oppressive or unscrupulous; or causes substantial injury to consumers; *and*

vii. Whether Defendants owe a duty to students to refrain from providing false and misleading information.

## Adequacy – 735 ILCS 5/2-801(3)

134.   The Named Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of, the putative class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other putative class members, who each have the same state law claims. Named Plaintiffs are members of the putative class and their interests coincide with, and are not antagonistic to, those of the other putative class members.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

135.     Named Plaintiffs are represented by counsel who are experienced in litigating complex consumer protection cases and class action matters in both state and federal courts and who have extensive knowledge on issues of higher education law, consumer protection, and student debt.

136.     The interests of the members of the putative class will be fairly and adequately protected by the Named Plaintiffs and their attorneys.

**Appropriateness – 735 ILCS 5/2-801(4)**

137.     Class action status is appropriate for the fair and efficient adjudication of this case because the Defendants have acted in the same unlawful manner with respect to all class members. A legal ruling concerning the unlawfulness of Defendants' representations and omissions since January 20, 2018 would vindicate the rights of every class member.

138.     Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense as well as prevent possible inconsistent results.

139.     Litigating individual lawsuits in the present case would be a waste of judicial resources and addressing the common issues in one action would aid judicial administration.

## FACTUAL ALLEGATIONS CONCERNING NAMED PLAINTIFFS

### Emmanuel Dunagan

140.     Emmanuel Dunagan is 26 years old and has lived in Bellwood, IL at all times relevant to this complaint.

141.     In December 2014, Mr. Dunagan was accepted into IIA-Chicago's illustration and design bachelor's degree program, which he started in January 2015. Mr. Dunagan has remained enrolled at IIA-Chicago from January 2015 to the present.

23

FILED DATE: 12/6/2018 5:58 PM 2018CH15216

142. **Mr. Dunagan** did not learn that IIA-Chicago had lost its accreditation on January 20, 2018 until he returned to school for summer classes on or around July 9, 2018 and attended meetings with President Ramey.

143. At the time Mr. Dunagan learned that IIA-Chicago was not accredited, all that remained for him to complete his degree was an internship.

144. Mr. Dunagan investigated whether Columbia College would accept the credits that he earned at IIA-Chicago. Columbia College **informed Mr. Dunag**an that **he** would **need to** attend for approximately two additional **years in** order to obtain the same degree that he would obtain if he remained at IIA-Chicago through December 2018.

145. Mr. Dunagan chose to remain enrolled at IIA, as Mr. Crowley had recommended, and is currently finishing his degree. Mr. Dunagan is scheduled to graduate from IIA-Chicago in December 2018.

146. Defendants' conduct has severely diminished the value of Mr. Dunagan's IIA education and the degree that he is about to receive.

147. Mr. Dunagan's official IIA-Chicago transcript will contain an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located in Chicago, Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

148. Defendants' conduct has caused serious damage to Mr. Dunagan. For this year alone, DCEH estimated the IIA-Chicago cost of attendance to be $28,878 (living with parents) and $32,644 (living off campus).

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

149.    Had Defendants followed HLC's directive and informed him in January 2018 that his "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," Mr. Dunagan would have investigated options for continuing his education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

**Jessica Muscari**

150.    Jessica Muscari is 30 years old and has lived in Wheaton, IL at all times relevant to this complaint.

151.    In April 2015, Ms. Muscari enrolled in IIA-Chicago's illustration and design bachelor's degree program. Ms. Muscari remained enrolled at IIA-Chicago from April 2015 until she graduated in September 2018.

152.    Ms. Muscari did not learn that IIA-Chicago had lost its accreditation on January 20, 2018 until she returned to school for summer classes on or around July 10, 2018.

153.    When Ms. Muscari learned that IIA-Chicago had not been accredited since January 20, 2018, she needed two credits to graduate.

154.    Nearly finished with her program, Ms. Muscari decided to remain enrolled at IIA-Chicago, as Mr. Crowley had recommended. Ms. Muscari graduated from IIA-Chicago in September 2018 and received high honors. Because she graduated while IIA-Chicago was not accredited, her diploma reflects graduation from an unaccredited institution.

155.    Defendants' conduct has severely diminished the value of Ms. Muscari's IIA education and degree.

156.    In addition, Ms. Muscari's official IIA-Chicago transcript contains an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located

FILED DATE: 12/6/2018 5:58 PM  2018CH15216

in Chicago, Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

157.    Defendants' conduct has caused serious damage to Ms. Muscari. For this year alone, DCEH estimated the IIA-Chicago cost of attendance to be $28,878 (living with parents) and $32,644 (living off campus).

158.    Had Defendants followed HLC's directive and informed Ms. Muscari in January 2018 that her "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," she would have investigated options for continuing her education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

**Robert J. Infusino**

159.    Robert J. Infusino is 22 years old and has lived in Addison, IL at all times relevant to this complaint.

160.    Mr. Infusino enrolled in IIA-Schaumburg's audio production bachelor's degree program in October 2015. Mr. Infusino remained enrolled at IIA-Schaumburg until he withdrew from the program on September 4, 2018.

161.    Mr. Infusino did not learn that IIA-Schaumburg lost its accreditation on January 20, 2018 until on or around July 5, 2018, when he was first made aware of the June 20 email sent while he was on break, as well as newspaper articles about the loss of accreditation.

162.    Upon returning to school on or around July 9, 2018, Mr. Infusino asked IIA-Schaumburg's financial aid office if he could get a refund for his unaccredited classes. He was told that the school was not issuing refunds.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

163.    Mr. Infusino also met with the registrar's office to ask for additional information and receive guidance about his options. The registrar did not have any additional information beyond what was communicated to students via email.

164.    At the time Mr. Infusino learned that IIA-Schaumburg was not accredited, he was scheduled to graduate in June 2019.

165.    Upon learning that IIA-Schaumburg had not been accredited since January 20, 2018, Mr. Infusino did not immediately know what to do. In order to keep making progress toward his degree, he remained enrolled in the school while he considered his options.

166.    Mr. Infusino ultimately withdrew from IIA-Schaumburg on September 4, 2018.

167.    Defendants' conduct has severely diminished the value of Mr. Infusino's IIA education.

168.    Mr. Infusino's official IIA transcript contains an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located in [Schaumburg], Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

169.    Defendants' conduct has caused serious damage to Mr. Infusino. For this year alone, DCEH estimated the IIA-Schaumburg cost of attendance to be $28,878 (living with parents) and $32,644 (living off campus).

170.    Had Defendants followed HLC's directive and informed Mr. Infusino in January 2018 that his "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," he would have

27

investigated options for continuing his education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

**Stephanie Porreca**

171.   Stephanie Porreca is 28 years old and has lived in Wood Dale, IL at all times relevant to this complaint.

172.   In July 2014, Ms. Porreca enrolled in IIA-Schaumburg's digital photography bachelor's degree program.  Ms. Porreca remained enrolled at IIA-Schaumburg from July 2014 until she graduated in June 2018.

173.   From January 20, 2018 until she graduated on June 16, 2018, Ms. Porreca was unaware that IIA-Schaumburg had lost its accreditation.

174.   Ms. Porreca, along with numerous family members, attended her graduation ceremony on June 18, 2018.  At no time during the graduation did Defendants mention that students were receiving diplomas from an unaccredited institution.

175.   On June 20, 2018, just two days after her graduation ceremony, Ms. Porreca received an email from President Ray stating that the school was not accredited.  This was the first time she learned that her school was not accredited.

176.   The June 20, 2018 email did not disclose to Ms. Porreca that IIA-Schaumburg lost accreditation five months prior.

177.   Ms. Porreca ultimately learned that IIA-Schaumburg lost accreditation in January 2018 when she was made aware, on or around July 8, 2018, of the June 19 *Post-Gazette* article.

178.   Ms. Porreca was stunned to learn that, because she had graduated while IIA-Schaumburg was not accredited, her diploma reflected graduation from an unaccredited institution.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

FILED DATE: 12/6/2018 5:58 PM  2018CH15216

179.     Defendants' conduct has severely diminished the value of Ms. Porreca's IIA education and degree.

180.     Ms. Porreca's official IIA transcript contains an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located in [Schaumburg], Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

181.     Defendants' conduct has caused serious damage to Ms. Porreca. For this year alone, DCEH estimated the IIA-Schaumburg cost of attendance to be $28,878 (living with parents) and $32,644 (living off campus).

182.     Had Defendants followed HLC's directive and informed Ms. Porreca in January 2018 that her "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," she would have investigated options for continuing her education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

## COUNT I
### Deceptive Practices Under the ICFDPA – Misrepresentations of Material Fact
### (All Defendants)

183.     Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

184.     The ICFDPA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

185.    As set forth above, Defendants engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under Section 2 of the ICFDPA, 815 ILCS 505/2.

186.    These deceptive acts or practices include, but are not limited to, misrepresentations to Named Plaintiffs and the class that IIA "remain[ed] accredited" by HLC after January 20, 2018.

187.    These misrepresentations were contained in widely distributed materials received and reviewed by Named Plaintiffs and the class, including in course catalogues, course catalogue addendums, enrollment agreements entered into on or after January 20, 2018, and the IIA-Chicago and IIA-Schaumburg websites.

188.    These deceptive acts or practices also include, but are not limited to, misrepresentations to Named Plaintiffs and the class that IIA was likely to reobtain accreditation and, when it did, all credits earned during the period of candidacy would reflect such accreditation.

189.    Defendants intended for Named Plaintiffs and the class to rely upon these misrepresentations.

190.    Defendants' violations took place repeatedly over the course of at least five months and were designed to mislead and deceive students regarding material facts about IIA.

191.    As a result of Defendants' conduct, Named Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of debt incurred in order to attend IIA, costs incurred to attend IIA, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their degrees, among other harms.

30

FILED DATE: 12/6/2018 5:58 PM 2018CH15216

192.    Defendants have therefore violated the ICFDPA, 815 ILCS 505/2, and Named Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

**REQUESTED RELIEF**

WHEREFORE, Named Plaintiffs individually, and on behalf of the putative class, respectfully request that this Court enter judgment in their favor and grant the following relief after a trial on the merits:

(1) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class as defined herein;

(2) Designating Named Plaintiffs as representatives of the class and the undersigned as class counsel;

(3) Entering judgment in favor of Named Plaintiffs and the class and against Defendants;

(4) Awarding Named Plaintiffs and the class actual damages in an amount to be proven at trial;

(5) Awarding Named Plaintiffs and the class punitive damages under the ICFDPA;

(6) Awarding Named Plaintiffs and the class reasonable attorney's fees and costs under the ICFDPA; *and*

(7) Granting all such further and other relief as the Court deems just and appropriate.

**COUNT II**
**Deceptive Practices Under the ICFDPA – Omissions of Material Fact**
**(All Defendants)**

193.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

194.    The ICFDPA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense,

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

> false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

195.     As set forth above, Defendants have engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under Section 2 of the ICFDPA, 815 ILCS 505/2.

196.     The deceptive acts or practices include, but are not limited to, the failure to disclose to Named Plaintiffs and the class that IIA lost accreditation on January 20, 2018.

197.     Defendants' violations took place repeatedly over the course of at least five months and were designed to conceal, suppress, and omit material facts regarding IIA's accreditation from Named Plaintiffs and the class.

198.     As a result of Defendants' conduct, Named Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of debt incurred in order to attend IIA, costs incurred to attend IIA, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their degrees, among other harms.

199.     Defendants have therefore violated the ICFDPA, 815 ILCS 505/2, and Named Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

## **REQUESTED RELIEF**

WHEREFORE, Named Plaintiffs individually, and on behalf of the putative class, respectfully request that this Court enter judgment in their favor and grant the following relief after a trial on the merits:

(1) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class as defined herein;

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

(2) Designating Named Plaintiffs as representatives of the class and the undersigned as class counsel;

(3) Entering judgment in favor of Named Plaintiffs and the class and against Defendants;

(4) Awarding Named Plaintiffs and the class actual damages in an amount to be proven at trial;

(5) Awarding Named Plaintiffs and the class punitive damages under the ICFDPA;

(6) Awarding Named Plaintiffs and the class reasonable attorney's fees and costs under the ICFDPA; *and*

(7) Granting all such further and other relief as the Court deems just and appropriate.

## COUNT III
### Unfairness Under the ICFDPA
### (All Defendants)

200.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

201.    To determine whether conduct is unfair, Illinois courts consider whether the practice offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury to customers.

202.    A practice offends public policy when it violates a standard of conduct contained in an existing statute, regulation, or common law doctrine that typically applies to such a situation.

203.    The Higher Education Act and its implementing regulations contain a public policy against false, erroneous, or misleading statements—known as "substantial misrepresentations"—about the nature and extent of an institution's accreditation. *See, e.g.,* 34 C.F.R § 668.71, 668.72(a).

33

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

204.    The Illinois Administrative Code also contains a public policy against false, erroneous, or misleading statements to students and the public regarding, among other things, "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." Ill. Adm. Code tit. 23 § 1030.60(a)(7).

205.    In addition, pursuant to HLC policy, an institution must "portray[] clearly and accurately to the public its accreditation status with national, specialized, and professional accreditation agencies as well as with the Higher Learning Commission, including a clear distinction between Candidate or Accredited status and an intention to seek status." *See* HLC Policy CRRT.A.10.010(7).

206.    By misrepresenting the nature and extent of IIA's institutional accreditation, Defendants are therefore in violation of the public policy reflected in the regulations implementing the Higher Education Act, the Illinois Administrative Code, and HLC policy.

207.    Defendants' misrepresentations and omissions regarding the nature and extent of IIA's accreditation therefore offend public policy and are unfair under the ICFDPA.

208.    Defendants' misrepresentations and omissions are also immoral, unethical, and oppressive under the ICFDPA.

209.    Because Defendants concealed the loss of accreditation from Named Plaintiffs and the class and affirmatively misrepresented that IIA "remain[ed] accredited," Named Plaintiffs and the class had no reason to know or suspect that their credits were unaccredited.

210.    Once they learned in June or July 2018 that IIA had lost accreditation in January 2018, there was no remedy by which they could obtain accreditation for their previous course work.

211.    Defendants' misconduct also caused substantial injury to consumers. As explained by HLC, credits earned by students during the candidacy period "may not be accepted in transfer to other colleges and universities or recognized by prospective employers."

212.    Not only were Named Plaintiffs harmed by Defendants' conduct, but so too were all students enrolled at IIA campuses from January 20, 2018 to the present. Upon information and belief, Defendants DCEH, DCF, and John Does 1-10 engaged in the exact same misrepresentations and omissions at the Art Institute of Colorado and Art Institute of Michigan, which were likewise placed on candidacy status by HLC on January 20, 2018.

213.    Defendants' conduct therefore had the potential to and did cause substantial injury to large numbers of consumers.

## REQUESTED RELIEF

WHEREFORE, Named Plaintiffs individually, and on behalf of the putative class, respectfully request that this Court enter judgment in their favor and grant the following relief after a trial on the merits:

(1) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class as defined herein;

(2) Designating Named Plaintiffs as representatives of the class and the undersigned as class counsel;

(3) Entering judgment in favor of Named Plaintiffs and the class and against Defendants;

(4) Awarding Named Plaintiffs and the class actual damages in an amount to be proven at trial;

(5) Awarding Named Plaintiffs and the class punitive damages under the ICFDPA;

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

(6) Awarding Named Plaintiffs and the class reasonable attorney's fees and costs under the

ICFDPA; *and*

(7) Granting all such further and other relief as the Court deems just and appropriate.

**COUNT IV**
**Negligent Misrepresentation**
**(Corporate Defendants)**

214.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

215.    Defendants, as the providers of educational services, represented that IIA was an accredited institution of higher education when, in fact, IIA had not been accredited since January 20, 2018.

216.    Defendants also represented that if IIA re-obtained HLC accreditation, all credits earned during the period of candidacy would be deemed accredited.

217.    At the time of these representations, Defendants knew or should have known that they were false. Alternatively, Defendants made them without knowledge of their truth or veracity.

218.    Defendants owed Named Plaintiffs and the class a duty to refrain from providing false and misleading information.

219.    Defendants breached that duty by misrepresenting and omitting material facts about IIA's accreditation status to Named Plaintiffs and the class.

220.    These negligent misrepresentations, upon which Named Plaintiffs and class members reasonably and justifiably relied, were intended to, and actually did induce, Named Plaintiffs and the class to remain enrolled at IIA.

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

36

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

221.    Had Defendants followed HLC's directive and informed Named Plaintiffs and the class in January 2018 that their "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," they would have investigated options for continuing their education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

222.    Defendant's negligent misrepresentation caused damage to Named Plaintiffs and the class, who are entitled to damages and other legal and equitable relief.

## REQUESTED RELIEF

WHEREFORE, Named Plaintiffs individually, and on behalf of the putative class, respectfully request that this Court enter judgment in their favor and grant the following relief after a trial on the merits:

(1) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class as defined herein;

(2) Designating Named Plaintiffs as representatives of the class and the undersigned as class counsel;

(3) Entering judgment in favor of Named Plaintiffs and the class and against Defendants;

(4) Awarding Named Plaintiffs and the class actual damages in an amount to be proven at trial; *and*

(5) Granting all such further and other relief as the Court deems just and appropriate.

## COUNT V
### Fraudulent Concealment
### (Corporate Defendants)

223.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

224.    For over five months, Defendants concealed from Named Plaintiffs and the class that IIA had lost its status as an accredited institution on January 20, 2018.

225.    This information was material to students in deciding whether to enroll and remain enrolled at IIA. As HLC explained in its January 20, 2018 statement: "Students taking classes or graduating during the candidacy period should know that their courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers."

226.    Whether courses or degrees are accredited and "accepted in transfer to other colleges and universities or recognized by prospective employers" is highly material to students' decision to enroll and remain enrolled in an institution of higher education.

227.    Defendants had a duty to inform Named Plaintiffs and the class about IIA's loss of accreditation.

228.    HLC's January 20, 2018 statement "require[ed] that the Institutes provide proper advisement and accommodations to students in light of this action, which may include, if necessary, assisting students with financial accommodations or transfer arrangements if requested."

229.    In addition, under United States Department of Education regulations, an institution of higher education receiving federal funds under Title IV of the Higher Education Act is prohibited from making "substantial misrepresentation[s] about the nature of its educational program, its financial charges, or the employability of its graduates." 34 C.F.R. § 668.71.

230.    A misrepresentation concerning "the nature of an eligible institution's educational program" explicitly includes, but is not limited to "false, erroneous or misleading statements

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

concerning - (a) The particular type(s), specific source(s), nature and extent of its institutional, programmatic, or specialized accreditation." 34 C.F.R. § 668.72(a).

231.    The Illinois Administrative Code also requires Defendants to "accurately describe" all "material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll." Ill. Adm. Code tit. 23 § 1030.60(a)(7) (2012).

232.    Similarly, HLC policy requires an institution to "portray[] clearly and accurately to the public its accreditation status with national, specialized, and professional accreditation agencies as well as with the Higher Learning Commission, including a clear distinction between Candidate or Accredited status and an intention to seek status." *See* HLC Policy CRRT.A.10.010 (7).

233.    By concealing the loss of accreditation, Defendants intended to induce a false belief that there had been no material change to the school's accreditation status and, by extension, no material change to how prospective employers and other institutions of higher education would value IIA credits.

234.    Due to Defendants' fraudulent concealment, as well as Defendants' affirmative representations that IIA "remain[ed] accredited," Named Plaintiffs and the class had no reason to seek out alternative sources of information regarding IIA's accreditation status.

235.    Named Plaintiffs and the class justifiably relied upon Defendants' silence as a representation that there had been no material change to their school's accreditation status and, by extension, no material change to how prospective employers and other institutions of higher education would value their credits and degrees.

236.    Had Defendants followed HLC's directive and informed Named Plaintiffs and the class in January 2018 that their "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers," they would have investigated options for continuing their education at an accredited school, rather than continuing to pay tuition and incur debt for unaccredited courses at IIA.

237.    As a result of Defendants' conduct, Named Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of debt incurred in order to attend IIA, costs incurred to attend IIA, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their degrees, among other harms.

## REQUESTED RELIEF

WHEREFORE, Named Plaintiffs individually, and on behalf of the putative class, respectfully request that this Court enter judgment in their favor and grant the following relief after a trial on the merits:

(1) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class as defined herein;

(2) Designating Named Plaintiffs as representatives of the class and the undersigned as class counsel;

(3) Entering judgment in favor of Named Plaintiffs and the class and against Defendants;

(4) Awarding Named Plaintiffs and the class actual damages in an amount to be proven at trial;

(5) Awarding Named Plaintiffs and the class punitive damages; *and*

(6) Granting all such further and other relief as the Court deems just and appropriate.

FILED DATE: 12/6/2018 5:58 PM    2018CH15216

FILED DATE: 12/6/2018 5:58 PM   2018CH15216

Respectfully Submitted,

/s/ Daniel A. Edelman

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)

Alexander S. Elson* **
Eric Rothschild **
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington D.C. 20005
alex@nsldn.org
eric@nsldn.org
www.nsldn.org
*(Member of New York Bar; practicing under supervision of
 organization principals while D.C. Bar application pending)
** Pro Hac Vice motions forthcoming

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

Atty. No. 41106

FILED
12/7/2018 11:07 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15216

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| EMMANUEL DUNAGAN,<br>JESSICA MUSCARI,<br>ROBERT J. INFUSINO, and<br>STEPHANIE PORRECA,<br>on behalf of themselves<br>and a class of similarly situated persons,<br><br>        Plaintiffs,<br><br>        v.<br><br>ILLINOIS INSTITUTE OF<br>ART- CHICAGO, LLC, an Illinois limited<br>liability company;<br>ILLINOIS INSTITUTE OF<br>ART- SCHAUMBURG, LLC, an Illinois<br>limited liability company;<br>ILLINOIS INSTITUTE OF ART, LLC,<br>an Illinois limited liability company;<br>DREAM CENTER FOUNDATION,<br>a California non-profit corporation; and<br>DREAM CENTER EDUCATIONAL<br>HOLDINGS, LLC, a Pennsylvania limited<br>liability company; and JOHN DOES 1-10,<br>in their individual capacity,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  <u>18-CH-15216</u> |

FILED DATE: 12/7/2018 11:07 AM  2018CH15216

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, and Stephanie Porreca

respectfully request that this Court enter an order determining that this action may proceed on

behalf of the following class of persons against defendants Illinois Institute of Art, LLC ("IIA");

Illinois Institute of Art- Chicago, LLC ("IIA-Chicago"); Illinois Institute of Art-Schaumburg, LLC

("IIA-Schaumburg"); Dream Center Foundation, a California corporation ("DCF"); and Dream

Center Educational Holdings, LLC ("DCEH"): all persons who were first enrolled or remained

FILED DATE: 12/7/2018 11:07 AM   2018CH15216

enrolled at IIA-Chicago and/or IIA-Schaumburg on or any time after January 20, 2018, including students who were enrolled prior to January 20, 2018 and remained enrolled after that date, as well as students who first enrolled on or after that date.

In support of this motion, Plaintiffs state:

## I. NATURE OF THE CASE

1.      IIA is an institution of higher education comprised of multiple campuses, including IIA-Chicago and IIA-Schaumburg, that offers bachelor's and associate degrees for several programs, including culinary arts, design, fashion, and media arts.

2.      On March 3, 2017, DCF entered into an agreement to purchase IIA, parent company of IIA-Chicago and IIA-Schaumburg, from its then-owner, Education Management Corporation ("EDMC").

3.      At the time of the purchase, all IIA campuses were accredited by the Higher Learning Commission ("HLC"), a private, non-profit accrediting agency recognized by the United States Department of Education that accredits approximately 1,000 degree-granting colleges and universities located in a nineteen-state region, including Illinois.

4.      On January 20, 2018, the transfer of control of IIA schools from EDMC to DCF and its subsidiaries went into effect.

5.      On that date, IIA—including IIA-Chicago and IIA-Schaumburg—lost its status as an accredited institution of higher education.

6.      Per HLC's January 20, 2018 instruction, Defendants were to inform all IIA students that "their courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers."

2

FILED DATE: 12/7/2018 11:07 AM    2018CH15216

7.    Institutional accreditation is the primary means of assuring and improving the quality of higher education institutions and programs in the United States.

8.    Whether an institution is accredited is essential and material information for students deciding whether to enroll, or stay enrolled in, such institution.  On its consumer information page, the Illinois Board of Higher Education states: "When you're looking around at Illinois schools, be sure the institution you select is accredited. Accreditation, by various nonprofit bodies, guarantees that the degree granted by an institution meets the accrediting body's standards of quality and content." *See* Illinois Board of Higher Education, Consumer Information, *available at:* http://legacy.ibhe.org/consumerInfo/authorize.htm.

9.    Accreditation is especially critical to students' efforts to obtain employment and transfer credits to other educational institutions.  With respect to employment, accreditation signals to prospective employers that a student's educational program has met widely accepted standards. With respect to transferability, accreditation indicates to educational institutions judging requests for transfer that the sending institution has met threshold expectations of quality.

10.    Lack of accreditation is a signal to employers and other educational institutions that a school may not satisfy widely accepted standards or meet threshold expectations of quality.  A student wishing to transfer credits to a different school or obtain employment will be at a significant disadvantage if the student attends or attended a school that lacks accreditation.

11.    After agreeing to purchase IIA, Defendants did not inform IIA students, including Plaintiffs, that IIA could lose its accreditation when the change in control took effect.

12.    From January 20, 2018 until at least June 20, 2018, Defendants deliberately concealed IIA's loss of accreditation from its over 1,000 students, including Plaintiffs.

3

FILED DATE: 12/7/2018 11:07 AM   2018CH15216

13.     For example, on January 23, 2018, two days after losing its status as an accredited

institution, IIA-Schaumburg President David Ray sent an email to all IIA-Schaumburg students to

share the "very exciting news" that IIA-Schaumburg "is now a non-profit institution!" The next

day, IIA-Chicago president Josh Pond sent the same email to all IIA-Chicago students. Mr. Pond's

email also invited students to "Please stop by the Student Lounge tomorrow (Thursday), January

25 between 11AM and 1PM for a cake and ice cream celebration!" The January 23 and 24, 2018

emails did not inform IIA students, including Plaintiffs, that IIA had lost its accreditation.

14.     In addition, from January 20 to at least June 20, 2018 Defendants made false and

misleading representations to Plaintiffs and other students regarding IIA's accreditation status,

including, in widely disseminated materials, that IIA campuses "remain accredited." For example:

A.     On February 28, 2018, Defendants published a "Catalog Addendum" to its

2017-2018 course catalog. The only item addressed in the addendum was an "Accreditation

Update," which stated:

> **Institutional Accreditation**
> The Illinois Institute of Art is in transition during a change of ownership. *We remain*
> *accredited* as a candidate school seeking accreditation under new ownership and our new
> non-profit status. Our students remain eligible for Title IV.

(emphasis added)

B.     On April 26, 2018, IIA published a spring course catalog for 2017-2018

which stated:

> **Institutional Accreditation**
> The Illinois Institute of Art is in transition during a change of ownership. *We remain*
> *accredited* as a candidate school seeking accreditation under new ownership and our new
> non-profit status. Our students remain eligible for Title IV.

(emphasis added)

C.     Until about June 19, 2018, IIA's websites contained the following

4

FILED DATE: 12/7/2018 11:07 AM   2018CH15216

statement: "We remain accredited as a candidate school seeking accreditation under new ownership and our new non-profit status."

      D.     The same statement appeared in IIA's course catalogs until August 6, 2018.

15.     Defendants concealed and misrepresented their accreditation status despite the fact that HLC instructed them on January 20, 2018 to inform students that their "courses or degrees are not accredited by HLC and may not be accepted in transfer to other colleges and universities or recognized by prospective employers." HLC also required Defendants to provide proper advice and accommodations to students in light of the loss of accreditation, including assisting students with financial accommodations or transfer arrangements, if requested.

16.     Students did not discover the truth about IIA's loss of accreditation until, at the earliest, June 20, 2018, and in many cases, only after they returned to school after a break on or around July 9, 2018.

17.     On June 20, 2018, IIA-Schaumburg president David Ray and IIA-Chicago President Jennifer Ramey sent identical emails to current IIA-Schaumburg and IIA-Chicago students informing them that: "We are a candidate school seeking accreditation under new ownership and our new non-profit status. During candidacy status, an institution is not accredited but holds a recognized status with HLC indicating the institution meets the standards for candidacy. Our students remain eligible for Title IV funding. DCEH continues to actively work with HLC to earn reinstatement of accreditation." School was not in session on June 20, 2018, so some students did not learn of the loss of accreditation until they returned from break, and were informed during meetings led by IIA and DCEH personnel that the school was not accredited, and had not been since January 20, 2018.

FILED DATE: 12/7/2018 11:07 AM    2018CH15216

18.     Defendants continued to make misleading representations on or after July 9, 2018, including that IIA was likely to reobtain accreditation and that credits earned since IIA lost accreditation would be deemed fully accredited once IIA's accreditation was ultimately reinstated.

19.     On July 2, 2018, while students were still out on break, Defendants announced that they were ceasing enrollment at IIA campuses, and that all IIA campuses would close on December 28, 2018.

20.     On or around November 7, 2018 HLC announced that IIA-Chicago and IIA-Schaumburg would not regain accreditation but rather would remain on candidacy status through their announced December 28, 2018 closure dates.

21.     On November 8, 2018, the presidents of IIA-Chicago and IIA-Schaumburg emailed students explaining that "[w]e are extremely disappointed in this unexpected outcome and assure you we will continue to work with each of you to find the best path forward for your continued education." The email further explained that "[s]tudents taking classes or graduating during the candidacy period should know that while the institution remains in candidacy status, their courses or degrees are not accredited by HLC."

22.     Students paid substantial tuition and other sums to Defendants as a result of their concealment and misrepresentations. The cost of attendance for academic year 2018-2019 for both IIA-Chicago and IIA-Schaumburg was estimated by DECH to be $28,878 (living with parents) and $32,644 (living off campus). This included tuition of $483 per credit as well as expenses such as room and board, transportation, personal expenses, fees, and books/supplies.

23.     Throughout the winter and spring of 2018, Defendants continued to recruit new students to enroll in IIA-Chicago and IIA-Schaumburg, without telling prospective students that the school was not accredited. IIA's enrollment agreements after January 20, 2018 affirmatively

6

FILED DATE: 12/7/2018 11:07 AM 2018CH15216

represented that the school was accredited. Like the course catalogues and website, the enrollment agreements stated: "We remain accredited as a candidate school seeking accreditation under new ownership and our new nonprofit status."

24.     Official IIA transcripts for students enrolled from January 20, 2018 to the present now contain an addendum with the following disclaimer: "Effective January 20, 2018[,] The Illinois Institute of Art located in Chicago [and Schaumburg], Illinois has transitioned to being a candidate for accreditation after previously being accredited. Institute courses completed or degrees earned during the candidacy period are not accredited by HLC."

25.     Plaintiffs allege that Defendants thereby violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 ("ICFDPA"), and committed fraud and negligent misrepresentation.

## II.  REQUIREMENTS FOR CLASS CERTIFICATION

26.     Illinois law provides:

Prerequisites for the maintenance of a class action. An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. Although the statute was modeled after Rule 23 of the Federal Rules of Civil Procedure, some differences exist between the two. *See Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 999, 574 N.E.2d 760, 762 (1st Dist. 1991).

7

FILED DATE: 12/7/2018 11:07 AM   2018CH15216

27.     The class action determination is to be made as soon as practicable after the commencement of an action brought as a class action and before any consideration of the merits. 735 ILCS 5/2-802. The circuit court has discretion as to whether an action may proceed as a class action. *See, e.g., Haywood v. Superior Bank*, 244 Ill. App. 3d 326, 328, 614 N.E.2d 461, 463 (1st Dist. 1993) (overturning the lower court's denial of class certification in a landlord-tenant case).

28.     In exercising its discretion, the trial court "should err in favor of maintaining class [certifications]." *S37 Mgmt., Inc. v. Advance Refrigeration Co.,* 2011 IL App (1st) 102496, ¶ 15, 961 N.E.2d 6, 11 (citations omitted).

29.     As demonstrated below, each of the requirements for class certification is met with respect to the proposed class.

## III.  SATISFACTION OF REQUIREMENTS FOR CLASS ACTION

### A.    Numerosity

30.     Section 2-801(1) parallels the language of Federal Rule of Civil Procedure 23(a)(1); therefore, federal case law is instructive on the numerosity requirements under the Illinois Rules. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n*, 198 Ill. App. 3d 445, 450, 555 N.E.2d 1150, 1153 (5th Dist. 1990). The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *See, e.g., Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 members sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 members sufficient).

31.     In the present case, the class is so numerous that joinder of all members is impracticable. Since January 20, 2018, there have been over 1,000 students enrolled at the IIA-

FILED DATE: 12/7/2018 11:07 AM  2018CH15216

Chicago and IIA-Schaumburg campuses. *See* College Scorecard, United Stated Department of Education, *available at:*

https://collegescorecard.ed.gov/search/?name=illinois%20institute%20of%20art%20&sort=salary:desc.

32.     Defendants have the precise number of class members and their records contain the names, addresses and amounts paid by each student.

**B.      Common questions predominate**

33.     A common question exists when the claims of individual class members are based on the common application of a statute or where they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153 (1st Dist.1992).

34.     Commonality is not defeated solely because of some factual variations among class members' grievances, including where individual determinations of damages are needed or where individual defenses exist. *See, e.g., Eshaghi*, 214 Ill. App. at 1003, 574 N.E.2d at 765 (finding commonality can exist even where members of the class are "differently affected by an applicability of the statute of limitations, doctrine of laches, good faith and unclean hands doctrine, exhaustion of contract or other remedies or even where some claims are barred by res judicata"); *Hall v. Sprint Spectrum, L.P.,* 376 Ill.App.3d 822, 831-32, 876 N.E.2d 1036 (5th Dist. 2007) ("That some members of a class are not entitled to relief will not bar the class action. . . . Individual questions of injury and damages do not defeat class certification."); *Bueker v. Madison Cty.*, 2016 IL App (5th) 150282, ¶ 26, 61 N.E.3d 237, 249, appeal denied, 77 N.E.3d 81 (Ill. 2017), and appeal denied, 77 N.E.3d 81 (Ill. 2017) ("Where the circuit court concludes that common questions of

FILED DATE: 12/7/2018 11:07 AM 2018CH15216

fact or law predominate over the individual issues, the existence of questions that apply only to individual class members will not defeat the predominating common question.").

35. The "common questions" may be the existence and legality of a standard business practice. *See, e.g., Haywood*, 244 Ill. App. 3d at 332, 614 N.E.2d at 465 (holding that "the common issue of defendants' uniform statutory violation predominates"). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

36. There are questions of law and fact common to the class, which predominate over any issues relating to individual class members. These common questions include:

A. Whether Defendants represented to students that IIA was an accredited institution on or after January 20, 2018;

B. Whether Defendants failed to disclose, after January 20, 2018, that IIA was no longer an accredited institution;

C. Whether Defendants intended that IIA students rely upon the concealment, suppression or omission of the fact that IIA was not an accredited institution;

D. Whether Defendants' representations and failures to disclose regarding IIA's accreditation constitute a deceptive act or practice under the ICFDPA, 815 ILCS 505/2;

E. Whether Defendants' omissions regarding IIA's accreditation constitute a deceptive act or practice under the ICFDPA, 815 ILCS 505/2;

F. Whether Defendants' conduct is unfair under the ICFDPA because it offends public policy; is immoral, unethical oppressive or unscrupulous; and/or causes substantial injury to consumers;

10

G.  Whether Defendants' concealment of IIA's loss of accreditation constitutes fraud; and

H.  Whether Defendants' conduct amounts to negligent misrepresentation.

37.     All members of the class have been subject to and affected by a uniform course of conduct in that all class members were enrolled at IIA during the period in which Defendants' unlawful conduct was ongoing.

38.     Other actions involving misrepresentations as to the accreditation of schools have been certified. *See, e.g., Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.,* 961 F.Supp. 305 (D.D.C. 1997).  So too have actions involving misrepresentations by institutions of higher education in Illinois under the ICFDPA. *See, e.g., Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir.1992) (certifying class of students suing beauty school under the ICFDPA); *Johnson v. Midland Career Institute, Inc.,* No. 93-cv-1363, 1993 WL 420954 (N.D. Ill Oct. 18, 1993) (certifying class of students suing trade school under the ICFDPA).

## C.     Adequacy of representation

39.     The adequacy of representation requirement involves two factors: (a) the class representatives' attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the class representatives must not have interests antagonistic to those of the class. *Rosario,* 963 F.2d at 1018.

40.     Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of, the putative class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other putative class members, who each have the same state law claims.  Plaintiffs are members of the putative class and their interests coincide with, and are not antagonistic to, those of the other putative class members.

11

41.     Plaintiffs are represented by counsel who are experienced in litigating complex consumer cases and class action matters in both state and federal courts, and who have extensive knowledge on issues of higher education law, consumer protection, and student debt. (<u>Appendices A and B</u>)

42.     The interests of the members of the putative class will be fairly and adequately protected by Plaintiffs and their attorneys.

**D.      Appropriateness of Class Action**

43.     Class actions are essential to enforce laws protecting consumers. In fact, "[i]n a large and impersonal society, class actions are often the last barricade of consumer protection." *Eshaghi*, 214 Ill. App. 3d at 1004, 574 N.E.2d at 766.

44.     A court must consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart*, 503 F.2d 1161, 1165 (7th Cir. 1974); *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985)(recognizing that in cases where the individual claims "may be so small, or the [individual] so unfamiliar with the law, that he would not file suit individually" the Court should certify the case). In such a case, failure to certify a class will result in a failure of justice.

45.     The special efficacy of the consumer class action has been noted by the 7th Circuit in its holding that courts should permit:

> [A] class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable. To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.

*Hohmann v. Packard Instrument Co.*, 399 F.2d 711, 715 (7th Cir. 1968) (citations omitted).

12

46.     A class action is appropriate for the fair and efficient adjudication of this case because Defendants have acted in the same unlawful manner with respect to all class members. Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense and prevent possible inconsistent results. Litigating individual lawsuits in the present case would be a waste of judicial resources, and addressing the common issues in one action would aid judicial administration.

WHEREFORE, Plaintiffs request that the Court certify the class as requested.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)


Alexander S. Elson* **
Eric Rothschild **
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington D.C. 20005
alex@nsldn.org
eric@nsldn.org
www.nsldn.org
*(Member of New York Bar; practicing under supervision of
 organization principals while D.C. Bar application pending)
** Pro Hac Vice motions forthcoming

13

FILED DATE: 12/7/2018 11:07 AM  2018CH15216

FILED DATE: 12/7/2018 11:07 AM   2018CH15216

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on December 6, 2018, or as soon as service may be effectuated, I had a copy of the foregoing document served by process server on each defendant.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)

14

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

## AFFIDAVIT OF SERVICE

FILED
1/9/2019 11:43 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

**State of Illinois**                    **County of Cook**

2018CH15216

Case Number: 2018CH15216

Plaintiff:
**Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, and
Stephanie Porreca, on behalf of themselves and a class of similarly
situated persons,**

CLU2019000024

vs.

Defendant:
**Illinois Institute of Art-Chicago, LLC, an Illinois Limited Liability
Company; Illinois Institute of Art-Schaumburg, LLC, an Illinois Limited
Liability Company; Illinois Institute of Art, LLC, an Illinois Limited
Liability Company; Dream Center Foundation, a California non-profit
corporation; Dream Center Educational Holdings, LLC, a Pennsylvania
Limited Liability Company; and John Does 1-10, in their individual
capacity,**

For:
Edelman, Combs, Latturner & Goodwin LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603

Received by Clutter Investigations Inc. DBA Courthouse Courier on the 7th day of January, 2019 at 2:52 pm to be served on **Illinois Institute of Art- Schaumburg, LLC c/o Registered Agent, Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, IL 62703.**

I, Michelle Tomlin, being duly sworn, depose and say that on the **8th day of January, 2019** at **2:33 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Alias Summons, Class Action Complaint and Jury Demand, Plaintiffs' Motion for Class Certification, and Appendix A & B** with the date and hour of service endorsed thereon by me, to: **Tyler Fuchs c/o Registered Agent, Illinois Corporation Service C** as **Document Specialist** for **Illinois Institute of Art- Schaumburg, LLC**, at the address of: **801 Adlai Stevenson Drive, Springfield, IL 62703**, and informed said person of the contents therein, in compliance with all applicable law.

**Description** of Person Served: Age: 26, Sex: M, Race/Skin Color: White, Height: 5'10", Weight: 175, Hair: Blonde, Glasses: N

FILED DATE: 1/9/2019 11:43 AM   2018CH15216

**FILED DATE:** 1/9/2019 11:43 AM   2018CH15216

## <u>AFFIDAVIT OF SERVICE For 2018CH15216</u>

I being first duly sworn on oath, states that I am over 18 years of age and not a party to this lawsuit. Under penalties of perjury as provided by law, pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the above statement is true and correct.

Subscribed and Sworn to before me on the 8th
day of _January_ , _2019_ by the affiant
who is personally known to me.

NOTARY PUBLIC

OFFICIAL SEAL
**SUSAN E LEEPER**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 06-09-2022

**Michelle Tomlin**
129-316088

**Clutter Investigations Inc. DBA Courthouse
Courier
1 West Old State Capitol Plaza
Suite 818
Springfield, IL 62701
(217) 528-5997**

Our Job Serial Number: CLU-2019000024

Copyright @ 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0m