IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMMANUEL DUNAGAN, JESSICA MUSCARI, ROBERT J. INFUSINO, and STEPHANIE PORRECA, on behalf of themselves and a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>ILLINOIS INSTITUTE OF ART-SCHAUMBURG, LLC, an Arizona limited liability company; ILLINOIS INSTITUTE OF ART, LLC, an Arizona limited liability company; DREAM CENTER FOUNDATION, a California non-profit corporation; DREAM CENTER EDUCATIONAL HOLDINGS, LLC, an Arizona limited liability company; BRENT RICHARDSON, in his individual capacity; CHRIS RICHARDSON, in his individual capacity; SHELLY MURPHY, in her individual capacity; and JOHN DOES 1–7, in their individual capacities,<br><br>    Defendants. | Case No. 19-cv-809<br>Hon. Charles Norgle |

**PLAINTIFFS' MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY OF DEFENDANT CHRIS RICHARDSON**

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

Alexander S. Elson*
Eric Rothschild*
Robyn K. Bitner*
**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
1015 15th Street NW, Suite 600
Washington D.C. 20005
www.defendstudents.org
*Admitted Pro Hac Vice

Plaintiffs Emanuel Dunagan, Jessica Muscari, Robert J. Infusino, and Stephanie Porreca (collectively, "Plaintiffs"), through undersigned counsel, move this Court for an order to compel further deposition testimony of Defendant Chris Richardson regarding actions he took in his capacity as general counsel to Defendant Dream Center Educational Holdings, LLC ("DCEH"). Mr. Richardson's testimony is incomplete as to critical events and discussions at the heart of this lawsuit because he refused to answer scores of questions based on invalid claims of attorney-client privilege.[1]

## INTRODUCTION

This case is about the efforts of Defendants Dream Center Foundation ("DCF"), its subsidiary DCEH, and certain individuals to misrepresent and fraudulently conceal the Illinois Institute of Art's ("IIA") loss of accreditation when DCF and DCEH purchased the school from its previous owner. Plaintiffs, former IIA students who enrolled in and chose to complete their studies at IIA with the obvious expectation that they would matriculate at an accredited institution, brought this action in December 2018 to recover damages for the substantial harm caused by Defendants' misrepresentations.

Proceedings against DCEH were put on hold in January 2019 when DCEH was placed into federal receivership. (Dkt. No. 37).[2] However, the case remains active against DCEH's parent company, DCF, and now includes DCEH's former general counsel, Chris Richardson, among others, for his role in directing IIA to publicly misrepresent its accreditation status.

---

[1] At the time of his deposition, Chris Richardson was not a defendant, although he was testifying about information he had learned while serving as Defendant DCEH's general counsel. On January 20, 2021, Plaintiffs moved to amend their complaint to include Mr. Richardson as an individual defendant (Dkt. No. 103), which the Court approved on January 25, 2021 (Dkt. No. 104). Since Mr. Richardson is now a party to the lawsuit, this motion is properly before this Court. *See* Fed. R. Civ. P. 37(a)(2).

[2] The Receivership proceeding is pending in the Federal District Court for the Northern District of Ohio. *See Dig. Media Sols. v. South Univ. of Ohio*, Case No. 1:19-cv-145 (N.D. Ohio Jan. 18, 2019) ("Receivership").

1

Plaintiffs deposed Chris Richardson on December 20, 2020. The focus of that deposition was a cache of DCEH's internal communications DCEH's and IIA's federal Receiver had produced to Plaintiffs in response to a document subpoena in this matter. These documents (hereinafter "DCEH Communications") include communications between DCEH personnel and their attorneys, including Mr. Richardson, regarding the wording of IIA's accreditation status on its website and in other materials. Specifically, the records show that DCEH, with the involvement of other Defendants, decided not to follow explicit instructions from IIA's accreditor, the Higher Learning Commission ("HLC"), regarding how to disclose IIA's accreditation status to students and the public. The records also show that Mr. Richardson instructed DCEH personnel to ensure that the school falsely held itself out as an accredited institution. Mr. Richardson's counsel nonetheless instructed Mr. Richardson not to answer questions about those records during his deposition on the basis of attorney-client privilege, even though both DCEH, while it was a going concern, and the Receiver have waived privilege as to these records through disclosure to third parties.

As we explain below, Mr. Richardson's privilege objections are without merit and should be rejected. *First*, the Receiver holds the privilege with respect to the DCEH Communications, which it waived by voluntarily producing those documents to Plaintiffs. *Second*, even when DCEH held the privilege before being put into receivership, it too waived the privilege by failing to take any action to recover certain DCEH Communications or mitigate the harm related to the disclosure of those records after it learned they had been produced to third parties. *Third*, separate and apart from the issue of waiver, Mr. Richardson improperly asserted privilege objections in response to questions that did not call for the disclosure of a client's confidential request for legal advice. For these reasons, Mr. Richardson's privilege objections should be overruled en masse and Mr.

Richardson should be ordered to answer the questions posed to him, and Mr. Richardson should be ordered to pay Plaintiffs' fees and costs associated with bringing this motion.

## RELEVANT FACTUAL BACKGROUND

**IIA loses its accreditation after being purchased by DCF and DCEH.**

Defendant DCF and its subsidiary group, DCEH, purchased IIA from the school's previous owner in 2017. At the time of the sale, IIA possessed full accreditation with HLC. As a condition of approving the transfer of ownership, however, HLC required IIA to accept a "Change of Control Candidacy Status" because the incoming owners "did not demonstrate that [HLC's] five approval factors were met without issue." Deposition of Chris Richardson ("Richardson"), Exh. 3.[3] HLC made clear that IIA would be in a "*pre*-accreditation status," *id*. (emphasis added), and advised that "any public announcement . . . about this action must include the information that any approval provided by [HLC] is subject to the condition of the buyers accepting Change of Control candidacy for not less than six months up to a maximum of four years." *Id.* The change in ownership and IIA's change in accreditation status took effect on January 20, 2018. *See* Richardson, Exh. 5.

When the time came for IIA to announce this change, IIA's interim president, Josh Pond, asked HLC for guidance on how to accurately represent the school's accreditation status on its website. *See* Richardson, Exh. 6 at DCEH-Studio 219071. HLC suggested "model" language for the school to use, which clearly indicated that IIA's new classification "[did] *not* represent accredited status." *Id.* at DCEH-Studio 219069–71.

---

[3] To avoid confusion, exhibits from Mr. Richardson's deposition cited in this motion are referred to by their deposition exhibit number. Citations to specific pages within those exhibits will be identified using the Bates label in the bottom right corner of the documents. Mr. Richardson's deposition transcript and exhibits are collectively attached as Exhibit A to Plaintiffs' motion.

3

**DCEH instructs IIA to misrepresent its accreditation status.**

When DCEH learned in February 2018 what language HLC had suggested for IIA's website, Mr. Richardson intervened on behalf of DCEH and ordered that the website falsely represent the school as being accredited. Richardson, Exh. 8 at DCEH-Studio 00788384. In June 2018, HLC notified IIA's leadership "with great concern" that the school's website contained a "misleading" claim that the school "remain[ed] accredited as a candidate school seeking accreditation under new ownership." Richardson, Exh. 1 at DCEH-Studio 170395. HLC reiterated the appropriate language—that IIA was a "candidacy school seeking accreditation," *id.*—and instructed the school to update the website accordingly. At this point—after months of misrepresenting IIA's accreditation status to students and the public—IIA's leadership complied. *See id.* at DUN-HLC 015317 LRR.

**HLC receives internal DCEH documents from a whistleblower.**

In July 2018, HLC received a complaint from Josh Pond, formerly the IIA President and DCEH employee, regarding IIA's representations on its website, attaching emails revealing that DCEH and its attorneys—including Mr. Richardson—had required IIA to hold itself out as accredited despite HLC's instructions to the contrary. *See* Richardson, Exh. 8 at DCEH-Studio 007870, *et seq*. In September 2018, HLC notified IIA of this complaint and forwarded to IIA's leadership the DCEH Communications, which it identified as "certain internal communications . . . related to the deliberations concerning required disclosures pertaining to the accreditation status of [IIA] after January 20, 2018," *id.*, that formed the basis of the complaint. These documents are largely comprised of internal emails between DCEH and its attorneys, including Mr. Richardson, which are at the heart of Plaintiffs' motion to compel. *See id.* at DCEH-Studio 007872–911; *see also* Richardson, Exh. 14 at DUN-PLS 000420–24, 000430–32 (additional

4

documents between DCEH and attorneys that the Receiver produced previously to the United States House of Representatives).

HLC requested that IIA's president at that time, Jennifer Ramey, review the DCEH Communications and "respond to the information contained therein." Richardson, Exh. 8 at DCEH-Studio 007870. DCEH's Chief Officer of Academic Excellence, Stacy Sweeney, forwarded HLC's letter to Mr. Richardson that same day and notified him of a meeting DCEH personnel had convened to discuss the complaint. *See* Richardson, Exh. 9. Although the DCEH Communications contain discussions between DCEH's counsel regarding IIA's accreditation status that Mr. Richardson claimed during his deposition to be presumptively privileged, DCEH did nothing to mitigate the obvious harm from their disclosure to IIA's accreditor, HLC. In fact, when asked about his efforts to address this disclosure, Mr. Richardson testified that he did not know about it until "[he] was subpoenaed for [the] deposition," Tr. 82:5-11[4], and that he had not reviewed the documents at any time prior to preparing for his deposition. Tr. 20:11-20.

**DCEH's Receiver has not treated the DCEH Communications as privileged.**

Following his appointment, the Receiver for DCEH and IIA took possession of their documents. Certain documents, including the DCEH Communications, were produced to a committee of the United States House of Representatives. Richardson, Exh. 14 (Letter from U.S. House of Representatives Comm. on Educ. & Labor to Sec'y of Educ., Betsy DeVos (July 16, 2019)) (referencing the documents); Letter from Eric Rothschild to Hugh Berkson (attached as Exhibit B). In response to Plaintiffs' subpoena, the Receiver agreed to reproduce those same documents to Plaintiffs. Exhibit B. Those documents now bear the bates stamp DCEH-Studio.

---

[4] Citations to Chris Richardson's deposition transcript will follow the format "Tr. [page number]:[line number(s)]."

Most of the DCEH Communications discussed herein were also independently available to Plaintiffs as a result of Congress releasing them to the public, and from the HLC production.

Undersigned counsel informed Mr. Richardson's counsel of Plaintiffs' intention to question Mr. Richardson about the DCEH Communications more than a week prior to the deposition, enclosing a number of the documents for counsel's review. Email from Eric Rothschild to Mike Schern (Dec. 12, 2020) (attached as Exhibit C). Undersigned counsel further explained Plaintiffs' position that DCEH had waived privilege over all the documents, and offered to further discuss the issue by telephone, but counsel advised he would not acknowledge any waiver of DCEH's privilege.[5] *Id.* Despite this notice, Mr. Richardson's counsel made no apparent effort to resolve the privilege/waiver issue with the Receiver prior to the deposition, nor did counsel for the Receiver attend Mr. Richardson's deposition. Aside from relaying his understanding that the Receiver "was going to assert attorney/client privilege in this matter," Tr. 16:1-15, Mr. Richardson was unable to elaborate on the scope of that alleged assertion, testifying that he had not received any instructions from the Receiver on how to assert that privilege during the deposition. Tr. 16:19-23.

All told, the DCEH Communications were disclosed to third parties—including HLC—on *three* separate occasions. Following each disclosure, DCEH took no steps to assert privilege over these communications, suggesting the disclosures were intentional. First, former IIA president Josh Pond gave some of the documents to HLC in support of his complaint about DCEH's role in

---

[5] Through these email communications on December 12 and 14, 2020, Plaintiffs satisfied their obligations under Local Rule 37.2 to attempt a consultation with opposing counsel to resolve differences about the application of privilege at Mr. Richardson's deposition. Additionally, the parties, through counsel, discussed the issue of privilege at length during Mr. Richardson's deposition. Finally, on February 17, 2021, counsel for Plaintiffs sent opposing counsel an email outlining the basis for Plaintiffs' challenges and the parties discussed the challenges by telephone on February 18, 2021. During the February 18, 2021 call, counsel for Chris Richardson advised that he would not withdraw his objections.

6

the misrepresentations. *See* Richardson, Exh. 8. Second, the Receiver produced the records to the United States House of Representatives in connection with a Congressional investigation related to IIA's misrepresentations. *See* Tr. 70:23 – 71:6; 126:1 – 127:13; 132:5-20; Richardson, Exh. 14. Third, the Receiver voluntarily produced the DCEH Communications to Plaintiffs' counsel in connection with this litigation. Letter from Eric Rothschild to Hugh Berkson (Sept. 2, 2020) (attached as Exhibit B).

**Mr. Richardson's privilege objections at the deposition lacked merit.**

Plaintiffs' counsel spent the lion's share of the deposition attempting to question Mr. Richardson about the DCEH Communications, as he indicated he would to Mr. Richardson's counsel more than a week earlier. At nearly every turn, Mr. Richardson's counsel refused to permit him to answer on privilege grounds and would not address Plaintiffs' waiver argument, telling undersigned counsel instead to "make that argument to the Court," Tr. 88:11, and oddly accusing Plaintiffs' counsel of "trying to sneak around the attorney/client privilege" by "put[ting] . . . Mr. Richardson in an impossible situation of face <sic> sanctions for refusing to answer a question or face liability for revelation of . . . material protected by the attorney/client privilege." Tr. 88:9-23.

With respect to the other privilege objections Plaintiffs now challenge, Mr. Richardson's counsel objected improperly to questions that on their face did not call for the disclosure of a client's confidential request for legal advice. For the Court's convenience, a table listing the transcript citations of the privilege objections Plaintiffs are challenging, and the specific grounds for those challenges, is attached as Appendix A.

Because the attorney-client privilege had been waived many times over as to the DCEH Communications, and because Mr. Richardson's counsel objected improperly as to countless other

questions, the Court should overrule Mr. Richardson's privilege objections and order him to submit to further questioning as needed.

## ARGUMENT

The attorney-client privilege applies to communications by a client to a lawyer for the purpose of seeking legal advice, provided that any such communications are made and maintained in confidence. *See, e.g., U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*, 244 F.R.D. 412, 419 (N.D. Ill. 2006). Application of the privilege is not absolute. The Seventh Circuit "strictly confine[s] [the privilege] within the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).[6]

The attorney-client privilege, like most others, is waivable and, in fact, "generally [is] waived when [privileged] documents are disclosed to third parties." *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005) (quotations omitted); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 735 (N.D. Ill. 2014) ("[D]isclosure of a document to a third party waives attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance."). This principle is grounded in the self-evident fact that a communication shared with a third party is not confidential.

Here, the DCEH Communications were disclosed to third parties on three separate occasions, including the Receiver's voluntary production of the records to Plaintiffs in connection with this litigation. As such, the privilege has been waived and Mr. Richardson should not have asserted it to avoid answering questions during his deposition.

---

[6] Illinois law applies because all claims are based on Illinois law, the school was located in Illinois, and the misrepresentations were made in Illinois to Illinois students. *Rawat v. Navistar International Corp.*, No. 08-cv-4305, 2010 U.S. Dist. LEXIS 34868, at *9 (N.D. Ill. Apr. 7, 2010).

**I.	The Receiver waived the attorney-client privilege by voluntarily producing the DCEH Communications to third parties.**

A "knowing disclosure to a third party" of privileged information "almost invariably surrenders the privilege." *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Matichak v. Joliet Park Dist.*, No. 16-cv-5877, 2016 WL 11706697, at *5 (N.D. Ill. Oct. 21, 2016) (holding that voluntary disclosure of privileged communication waives the privilege). Further, waiver under these circumstances usually will extend to all communications on the same subject matter. *See Chicago Tribune Co. v. U.S. Dep't of Health & Human Servs.*, No. 95-cv-3917, 1997 WL 1137641, at * 4 (N.D. Ill. Mar. 28, 1997); *see also Urban Outfitters v. DPIC Cos.*, 203 F.R.D. 376, 381 (N.D. Ill. 2001) ("Voluntary disclosures, as opposed to inadvertent disclosures, waives the attorney-client privilege as to remaining documents of the same subject matter."); *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 176, 156 N.E.3d 1212 ("Our supreme court deems . . . voluntary disclosure to be an 'express waiver.'").

As an initial matter, the Receiver, acting through counsel, had the authority to waive the privilege over the DCEH Communications, even though they had been created prior to the Receivership. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) (discussing that former corporate managers cannot assert privileges over the wishes of current managers, even as to statements that the former managers made to counsel concerning matters within the scope of their corporate duties); *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, No. 3:16-cv-946, 2018 WL 1532795, at *2 (S.D. Ill. Mar. 29, 2018) (holding that the "power to waive [attorney-client] privilege rests with the corporation's management" and "change of control of a corporation generally passes control of the privilege on to new management").

Here, the Receiver disclosed the DCEH Communications on two separate occasions prior to Mr. Richardson's deposition: once to Congress and then again to Plaintiffs.[7] The record is likewise clear that the Receiver did not instruct Mr. Richardson to "do anything in [his] deposition to protect the privilege," Tr. 18:8-9, and Mr. Richardson's counsel made no effort to resolve this issue beforehand.

The Receiver's knowing and intentional disclosure of the DCEH Communications to the Plaintiffs in this litigation was an unequivocal waiver of the privilege over those documents and all related communications. Accordingly, Mr. Richardson's privilege objections to questions about these documents have been waived and should be overruled.

**II.     DCEH independently waived privilege over its internal communications by failing to take steps to retrieve them or mitigate the harm of the disclosures.**

As discussed above, the Receiver's voluntary waiver of the privilege is dispositive. But even before the Receiver produced the DCEH Communications to Plaintiffs, DCEH independently waived privilege over some of those documents by failing to take *any* action to mitigate the harm of the initial disclosure to HLC more than two years ago.

As a general matter, a client wishing to preserve the attorney-client privilege "must treat the confidentiality of attorney-client communications like jewels, if not crown jewels." *Banks v. Office of Senate Sergeant-at-Arms*, 241 F.R.D. 376, 386 (D.D.C. 2007); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002)

---

[7]     The Receiver's production to Congress is likely an independent basis for finding waiver. *See Lawrence E. Jaffe Pension Plan,* 244 F.R.D. at 432 (noting that the concept of "selective waiver"—which would protect limited disclosure of confidential records to a government entity in connection with an investigation—generally is "not viewed with particular favor" by courts in the Northern District of Illinois and thus production of confidential materials to Office of the Comptroller constituted waiver); *but see In re Aqua Dots Products Liab. Litig.*, 270 F.R.D. 322, 329–30 (N.D. Ill. 2010), *aff'd* 654 F.3d 748 (7th Cir. 2011) (noting that the Seventh Circuit "left open the possibility" for selective-waiver protection under certain circumstances). In any event, the Receiver's production to Plaintiffs inarguably waived the privilege.

("[A]ttorney-client privilege should be available only at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality.") (citations omitted). For that reason, any disclosure to a third party generally waives the privilege. *See Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (noting that this court "chooses to follow the objective approach" to assess waiver because "once the documents [have] been disclosed their confidentiality [is] irretrievably lost").

But even where disclosure is truly inadvertent (which was not the case here), courts still look for assurances that the producing party treated the confidential communications as "crown jewels" by taking appropriate steps to walk back the disclosure or otherwise mitigate the harm. *See Heriot v. Byrne*, 257 F.R.D. 645, 658–59 (N.D. Ill. 2009); *compare Harmony Gold*, 169 F.R.D. at 117 (finding waiver where client's "attempt to rectify the error was lax at best").

DCEH took no such steps here. DCEH was on notice of the disclosure to HLC no later than September 14, 2018, when HLC sent the records to IIA in connection with a former employee's complaint. In the two years that followed before Mr. Richardson's deposition in December 2020, DCEH did not attempt to claw back the documents or take any other steps to protect its confidences. Moreover, the records were sent to Chris Richardson the same day IIA received them, *see* Richardson, Exh. 9, yet Mr. Richardson likewise did nothing to "rectify the error" of the disclosure.[8]

Even if the Receiver had not unambiguously waived privilege over the DCEH communications, DCEH itself forfeited any claim of privilege through its years of inaction after

---

[8] Mr. Richardson made the incredible assertion at his deposition that he was not aware of Ponds' disclosure to HLC until "[Richardson] was subpoenaed for [the] deposition." Tr. 82:5-11. This lacks credibility. As Mr. Richardson also testified, he had primary responsibility as DCEH's general counsel for "*any* legal issue that came up in relationship to the accreditation" of IIA. Tr. 32:2-8 (emphasis added).

11

learning about the disclosure to HLC. This is an independent basis for the Court to overrule Mr. Richardson's privilege objections.[9]

### III. Mr. Richardson's remaining privilege objections are without merit.

Mr. Richardson's remaining objections fail of their own accord. The underlying questions either did not call for the disclosure of a client's confidential request for legal advice or did not probe the substance of a communication at all and instead permissibly sought information like the identity of a party or the subject-matter of a discussion—basic information that is required on every privilege log. *See, e.g.*, *Faught v. Pulver*, No. 15-cv-7105, 2016 WL 11701703, at *3 (N.D. Ill. Aug. 1, 2016).

**1. Mr. Richardson erroneously objected despite no confidential request for legal advice.** "A communication is not privileged simply because it is made to or by a person who happens to be a lawyer." *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997); *see also Nerdig v. Elec. Ins. Co.*, No. 17-cv-01859-PHX-GMS, 2018 WL 5776523, at *2 (D. Ariz. Nov. 1, 2018) (noting that attorney-client privilege "protects a subset of communications between a lawyer and client—not all tasks performed by a lawyer, legal and non-legal"). Thus, the privilege "generally attaches only to statements made by the client" and only encompasses statements made by the lawyer "where those communications rest on confidential information obtained from the

---

[9] Many of the communications contained in the DCEH Communications were between Mr. Richardson and DCEH's outside counsel and did not contain or reflect confidential communications from the client. As such, they would not be covered by the attorney-client privilege in the first instance. To the extent these communications are more accurately the "mental impressions, conclusions, opinions, or legal theories" of the attorneys, which generally are protected by the attorney work product doctrine, *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), Mr. Richardson waived any objection on that ground by failing to assert work-product protection over any of the documents or testimony. But even if Mr. Richardson could raise the work-product objection belatedly, it would still fail because "the voluntary disclosure of attorney work product to an adversary waives work product protection." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002). Thus, the Receiver's voluntary production to Plaintiffs in this case also waived work-product protection over the DCEH Communications.

client, or where those communications would reveal the substance of a confidential communication by the client." *Baran v. Walsh Const. Co.*, No. 05-cv-4792, 2007 WL 54065, at *1 (N.D. Ill. Jan. 4, 2007). Where the communication does not contain or reveal a request for legal advice, the privilege does not attach. *Nerdig,* 2018 WL 5776523*,* at *2 ("Because Defendant admits that the claim notes do not contain legal advice, the material is not protected by the attorney-client privilege.").

Mr. Richardson objected to numerous questions that plainly did not call for the disclosure of a client's confidential request for legal advice. Rather, Plaintiffs' questions permissibly sought general information, such as (i): whether a lawyer unilaterally instructed a client to do something (*e.g.*, Tr. 46:21 – 47:13), (ii) whether a lawyer or client expressed a particular emotion when confronted with certain information (such as shock (Tr. 97:19-23) or surprise (Tr. 139:19-25)), and (iii) whether a lawyer or client simply transmitted a particular document (*e.g.*, Tr. 73:20 – 74:3; Tr. 113:2-10).[10] As to the questions that did not call for the disclosure of a client's confidential request for legal advice, Mr. Richardson's privilege objections were misplaced and should be rejected.

**2. Mr. Richardson also erred in objecting to inquiry only as to subject matter or identity.** Because the attorney-client privilege protects only communications containing or revealing a client's confidential request for legal advice, a party withholding information on a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself

---

[10] Mr. Richardson's counsel went even further, asserting privilege as to purely yes-or-no questions such as, "Does this group of documents refresh your recollection about who drafted the language [at issue in this case], including the language 'we remain accredited as a candidate school . . . ,'" Tr. 92:7-10, and, "[Y]ou were aware that Dr. Sweeney had communicated that because Shelly Murphy had forwarded these emails to you . . . ." Tr. 73:20-22.

13

privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). "This is usually done by submitting a 'privilege log' which identifies, for *each* separate document[,] the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *Faught,* 2016 WL 11701703, at *3 (citations omitted) (emphasis in original).

Here, Mr. Richardson raised multiple objections to questions that sought nothing more than basic information that would have to be disclosed on a privilege log, including: (i) the identity of the person who drafted a document (*e.g.*, Tr. 92:7-19; 92:25 – 93:25), (ii) the fact that a particular document was transmitted between two people (*e.g.*, Tr. 86:22 – 87:19), or (iii) the subject-matter of a particular communication (*e.g.*, Tr. 138:10-15; Tr. 140:15-20). Mr. Richardson's efforts to conceal even this general information—which he would have had to disclose if he had logged the DCEH Communications—was especially problematic since it impeded Plaintiffs' ability to discover the identity of other individuals who took part in or knew about DCEH's deliberate effort to mislead students by falsely claiming that IIA remained accredited. *See* Fed. R. Civ. P. 26(b)(1) (explaining that parties are entitled to discover "the identity and location of persons having knowledge of any discoverable matter"). Because Plaintiffs were entitled to this basic information, the Court should reject Mr. Richardson's efforts to hide it.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be granted in full. The Court further should order Mr. Richardson to pay Plaintiffs' fees and costs associated with bringing this motion. *See* Fed. R. Civ. P. 37(a)(5)(A).

Respectfully Submitted,

/s/ *Daniel A. Edelman*

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com


Alexander S. Elson*
Eric Rothschild*
Robyn K. Bitner*
**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
1015 15th Street NW, Suite 600
Washington D.C. 20005
www.defendstudents.org
*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on Thursday, February 18, 2021 I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

I further certify that copies were sent via U.S. mail for the following parties:

Shelly Murphy
1803 W Encinas St.
Gilbert, AZ 85233

Mike Schern
Schern Richardson Finter
1630 S. Stapley Dr. Ste 132
Mesa, AZ 85204

                                                    s/ Daniel A. Edelman
                                                    Daniel A. Edelman

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Ste 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

## APPENDIX A

|   | PAGE/LINE | BASIS FOR CHALLENGE |
|---|---|---|
| 1 | 46:21 – 47:13 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (instruction by lawyer) |
| 2 | 73:20 – 74:3 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (email forward w/o comment) |
| 3 | 75:17 – 21 | • Waiver |
| 4 | 86:22 – 87:19 | • Waiver |
| 5 | 91:4-9 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (instruction to client) |
| 6 | 92:7-19 | • Waiver<br>• Question does not call for disclosure of request for legal advice (identity of a certain person) |
| 7 | 97:19 – 98:4 | • Question does not call for disclosure of confidential request for legal advice (expression of emotion by attorney) |
| 8 | 98:9 – 15 | • Question does not call for disclosure of confidential request for legal advice (expression of emotion by client) |
| 9 | 98:17 – 25 | • Question does not call for disclosure of confidential request for legal advice (expression of concern by attorney) |
| 9 | 99:1-5 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 10 | 99:25 – 100:4 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |

17

| | | |
|---|---|---|
| 11 | 100:17-20 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 12 | 102:6-10 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 13 | 104:10-15 | • Waiver |
| 14 | 105:7-9 | • Waiver |
| 15 | 105:13-18 | • Waiver |
| 16 | 105:22 – 106:1 | • Waiver |
| 17 | 106:5-9 | • Waiver |
| 18 | 106:18-23 | • Waiver |
| 19 | 107:2-6 | • Waiver |
| 20 | 107:10-19 | • Waiver |
| 21 | 109:15-23 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (instruction by lawyer) |
| 22 | 111:3-8 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (identity of certain person) |
| 23 | 113:2-10 | • Waiver |
| 24 | 114:4-15 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (instruction by lawyer) |
| 25 | 121:14-23 | • Question does not call for disclosure of confidential request for legal advice (identity of certain person) |
| 26 | 127:10-15 | • Waiver<br>• Question does not call for disclosure of confidential request |

18

| | | |
|---|---|---|
| | | for legal advice (communication between lawyers) |
| 27 | 134:14 – 135:6 | • Waiver |
| 28 | 138:2-9 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 29 | 138:10-15 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 30 | 139:19-25 | • Question does not call for disclosure of confidential request for legal advice (expression of emotion by client) |
| 31 | 140:15-20 | • Question does not call for disclosure of confidential request for legal advice (identification of subject matter of communication) |
| 32 | 186:21 – 187:7 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (communication between lawyers) |
| 33 | 188:3-7 | • Waiver<br>• Question does not call for disclosure of confidential request for legal advice (communication between lawyers) |

19